UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 5:19-CV-00056-FDW

| | |
|---|---|
| LISA M. PLEMONS,  )<br>  )<br>    Plaintiff,  )<br>  )<br>vs.  )<br>  )<br>ANDREW SAUL, Commissioner of Social  )<br>Security Administration  )<br>  )<br>    Defendant.  )<br>  )<br>  ) | ORDER |

THIS MATTER is before the Court on Plaintiff Lisa M. Plemons' Motion for Judgment on the Pleadings and Memorandum in Support (Doc. Nos. 12, 13), filed October 11, 2019, and Defendant Acting Commissioner of Social Security Andrew Saul's ("Commissioner") Motion for Summary Judgment and Memorandum in Support (Doc. Nos. 14, 15), filed November 8, 2019. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for Supplemental Security Income.

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is DENIED; the Commissioner's Motion for Summary Judgment is GRANTED; and the Commissioner's decision is AFFIRMED.

1

# I. BACKGROUND

On February 6, 2013, Plaintiff filed a Title XVI application for Supplemental Security Income ("SSI"), alleging disability beginning August 1, 2012. (Tr. 14). After her application was denied initially and upon reconsideration (Tr. 35, 53-56), Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). (Tr. 57). The ALJ held a hearing on October 2, 2017, after which the ALJ issued an unfavorable decision on February 28, 2018, finding Plaintiff not disabled under the Social Security Act. (Tr. 14-25).

During the five-step sequential evaluation process for determining whether an individual is disabled under the Social Security Act, Mary Ryerse, the ALJ, found at step one that Plaintiff had not engaged in substantial gainful activity since February 6, 2013, the date Plaintiff filed the application for SSI. (Tr. 16). At step two, the ALJ found Plaintiff to have the following severe impairments: "major depressive disorder; degenerative disc disease of the lumbar spine; lumbosacral radiculopathy; history of scoliosis status post insertion of a Harrington rod; left knee meniscal tear; and right shoulder impingement syndrome[.]" (Tr. 16). At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 18). Then, the ALJ found Plaintiff had the Residual Functional Capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.976(a):

> [E]xcept lift/carry 10 pounds occasionally and less than 10 pounds frequently; stand/walk up to 2 hours in an 8-hour workday; sit up to 6 hours in an 8-hour workday; occasional pushing and pulling with bilateral upper extremities; occasionally climb ramps/stairs, balancing, stooping, kneeling, crouching, and crawling; no climbing ladders, ropes, or scaffolds; no overhead reaching bilaterally; avoid working at unprotected heights; limited to performing simple, routine tasks; maintaining concentration, persistence, and pace for two hour periods during the

> workday; limited to occasional interaction with the public; and limited to a stable work environment, which means few and infrequent changes to the work routine.

(Tr. 19). For step four, in response to a hypothetical factoring in Plaintiff's age, education, work experience, and RFC, the vocational expert ("VE") testified Plaintiff could not perform her past relevant work, and the ALJ further concluded Plaintiff had not acquired skills transferable to other jobs within her RFC. (Tr. 10-11). For step five, the ALJ then asked the VE whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and RFC. (Tr. 11). The VE testified given those factors, the individual would be able to perform the requirements of representative occupations including: "addresser (DOT #209-587.010 svp 2 sedentary work approximately 14,000 jobs nationally); a document preparer (DOT #249-587.018 svp 2 sedentary work approximately 14,000 jobs nationally); and a film inspector (DOT #726-684.050 svp 2 sedentary work approximately 10,000 jobs nationally)." (Tr. 11-12). Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act from February 6, 2013, the date the application was filed, through the ALJ's decision. (Tr. 12).

Plaintiff's subsequent request for review by the Appeals Council was denied on March 8, 2019, and as a result the ALJ's decision became the final decision of the Commissioner. (Tr. 5-8). Plaintiff has exhausted all administrative remedies and now appeals to this Court pursuant to 42 U.S.C. § 405(g). Plaintiff argues the ALJ failed to properly evaluate the opinion evidence and failed to resolve an apparent conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). (Doc. No. 13, p. 1).

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits. When examining a disability

3

determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 2013).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). We do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," we defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe

4

impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so

5

that [the ALJ] can determine how [her] symptoms limit [her] capacity for work."
20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862. If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

### III. ANALYSIS

Plaintiff asserts two assignments of error. First, Plaintiff argues the ALJ "improperly considered the opinion of Natacha Sochat, M.D., the state agency medical consultant." (Doc. No. 13, p. 9). Second, Plaintiff contends the ALJ "erred by failing to resolve an apparent conflict between the VE's testimony and the DOT." Id. at 12. As discussed below, because the ALJ applied the correct legal standards and the decision is supported by substantial evidence, Plaintiff's assignments of error are overruled.

**A. Sufficiency of the ALJ's RFC Finding**

Plaintiff's first inquiry on appeal is whether the ALJ properly considered the opinion of Natacha Sochat, M.D., the state agency medical consultant. (Doc. No. 13, p. 1). Plaintiff argues the ALJ erred in affording limited weight to Dr. Sochat's opinion and "ultimately determin[ing] a

6

greater limitation in the RFC to sedentary (rather than light) work was warranted." Id. at 10. Specifically, Plaintiff contends, while Dr. Sochat checked the box indicating Plaintiff was "limited in upper extremities" regarding pushing and/or pulling, Dr. Sochat later stated in her report Plaintiff was "limited to work with *no* pushing or pulling with the [right upper extremity] due to her shoulder impingement syndrome with loss of motion and atrophy." Id. at 10-11. Plaintiff alleges the ALJ failed to reconcile that note with the RFC, which states Plaintiff is limited to "occasional pushing and pulling with bilateral upper extremities." Id. at 11. Further, Plaintiff argues the ALJ failed to conduct a "function-by-function assessment and failed to provide the 'narrative discussion' required," and such "error is not harmless." Id. Conversely, Defendant contends the ALJ "properly considered the relevant evidence of the record and accounted for limitations she found to be supported by such evidence." (Doc. No. 15, p. 6). Defendant further argues Plaintiff "fails to establish a legal basis for her claim, but rather invites this Court to impermissibly reweigh the evidence and craft a different RFC merely because [Plaintiff] disagrees with the ALJ's decision." Id. at 6-7.

When determining whether a claimant is disabled, the ALJ must consider all medical opinions in the record in addition to all other evidence they receive. 20 C.F.R. § 404.1527(b). Pursuant to federal regulation, the ALJ is required to "evaluate every medical opinion [they] receive" regardless of its source. 20 C.F.R. § 404.1527(c). When the ALJ does not afford a treating physician's opinion controlling weight, they consider numerous factors in determining the amount of weight they give to any medical opinion. Id. These factors include: (1) examining relationship; (2) treatment relationship, including the length of the treatment relationship and frequency of evaluation, as well as the nature and extent of the treatment relationship; (3) supportability; (4)

7

consistency; (5) specialization; and (6) other factors. Id. However, the ALJ is not required to give special consideration to any medical source opinion with respect to whether the claimant is disabled, their RFC, the application of vocational factors, or whether the impairment meets or equals the requirements of any impairments in the Listing of Impairments. 20 C.F.R. § 404.1527(d). "[B]ecause they are administrative findings that are dispositive of the case; *i.e.*, that would direct the determination or decision of disability . . . the final responsibility for deciding these issues is reserved to the Commissioner." Id. Pursuant to Fourth Circuit precedent, a treating physician's opinion need not be given controlling weight where "the physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). See also Barbare v. Saul, No. 19-1503, 2020 WL 3303378, at *3 (4th Cir. June 18, 2020).

When establishing the RFC, the "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p, 1996 WL 374184, at *1. Only after a function-by-function analysis has been completed may the RFC "be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Id. Further, the ALJ's decision must include "a narrative discussion describing how the evidence supports each conclusion [and] citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)" that explains how the evidence supports each RFC conclusion. Id. Finally, the decision "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." Id. at *7.

8

Case 5:19-cv-00056-FDW   Document 17   Filed 08/13/20   Page 8 of 16

In Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015), the Fourth Circuit held remand may be appropriate where "an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). However, the Fourth Circuit did not adopt a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," because such a rule "would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Id.

The records relied on by the ALJ provide substantial support for the ALJ's determination. See generally Keffer v. Colvin, 519 F. App'x 151 (4th Cir. 2013) (affirming Commissioner's decision upon review of record showing substantial evidence supported the ALJ's RFC determination). As such, the Court agrees with Defendant's assertion that "the ALJ's rationale supporting the RFC assessment is reasonably discernable when evaluated against the evidence of the record." (Doc. No. 15, p. 7). Upon review, this Court cannot re-weigh conflicting evidence or make credibility determinations, Hays, 907 F.2d at 1456, and instead only considers whether "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" exists. Johnson, 434 F.3d at 653 (citations omitted). Here, the ALJ discussed both medical and non-medical evidence relevant to Plaintiff's physical limitations.

In analyzing the opinions of state agency medical consultants, the ALJ made the following conclusion concerning the opinion of Dr. Sochat:

> On October 26, 2015, Dr. N. Sochat, a state agency medical consultant, determined that the claimant had lumbosacral radiculopathy, right shoulder impingement, scoliosis, a meniscus tear, pain, and hypertension. Dr. Sochat assessed the claimant is able to perform work that required lifting and carrying 20 pounds occasionally

> and 10 pounds frequently, sitting for about 6 hours, and standing and walking for about 6 hours during an 8-hour workday. The claimant was also limited in pushing and pulling with her upper extremities and in reaching in all directions including overhead reaching. The claimant could occasionally climb, balance, stoop, kneel, crouch and crawl. I have given some weight to this decision regarding the claimant's restrictions, but conclude that medical records submitted after Dr. Sochat made his determination demonstrate that the claimant could perform a range of no more [than] sedentary work (Exhibit 12F).

(Tr. 23). Plaintiff correctly points out Dr. Sochat checked the box on the Physical RFC Assessment form indicating Plaintiff was "limited in upper extremities" regarding her ability to push and/or pull, and further noted Plaintiff was limited to no pushing or pulling with her right upper extremity due to her shoulder impingement syndrome with loss of motion and atrophy. (Tr. 264). However, as Defendant alleges and the ALJ found, medical records submitted after Dr. Sochat's determination demonstrate after the October 2015 consultative examination through September 2017, Plaintiff continued to complain of back pain but denied extremity and joint pain. Id. at 320, 324, 329, 332, 351, 355, 363.

With respect to Plaintiff's treating physicians, the ALJ gave limited weight to their opinions regarding Plaintiff's physical work-related limitations. (Tr. 20). The ALJ considered evidence provided by Dr. Fedder, who on October 13, 2015, indicated Plaintiff had "severe difficulty ambulating because of her antalgic gait and had severe pain in straight leg raising, sitting, and supine at 30 degrees, worse on the right." (Tr. 20). Dr. Fedder also noted Plaintiff complained of right shoulder pain, and his impression at the time of the evaluation included right shoulder impingement. Id. at 17. However, because Dr. Fedder did not note any specific work-related limitations, the ALJ gave his opinion limited weight. Id. at 20.

The ALJ also looked at evidence provided by Christina Xiong, a treating nurse practitioner, who in December 2016 noted Plaintiff complained of worsening back pain exacerbated by

10

exertion, weightlifting, prolonged standing, prolonged sitting, and lying down. Id. at 18. The ALJ cited a letter from Ms. Xiong dated September 7, 2016, in which she reported due to Plaintiff's current medical condition, Plaintiff was unable to work and was considered disabled from employment. Id. at 20. While noting Plaintiff's impairments, the ALJ gave "little weight to this opinion . . . because [Ms. Xiong] did not note specific limitations imposed by the [Plaintiff's] medical conditions." Id. Further, the ALJ is not required to give special consideration to Ms. Xiong's statement regarding Plaintiff's disability, as such a conclusion is "reserved to the Commissioner." 20 C.F.R. § 404.1527(d). Finally, while Ms. Xiong notes Plaintiff's complaints of back pain, she does not mention any difficulties with Plaintiff's upper extremities and instead indicates "joint pain" was "not present." (Tr. 320). This lends weight to the ALJ's statement that medical records submitted after Dr. Sochat's determination support the ALJ's conclusion.

Finally, Plaintiff's own testimony further supports the ALJ's determination regarding Dr. Sochat's opinion. The ALJ gave Plaintiff's subjective allegations and testimony limited weight because the "disparity between the reported symptoms and the objective evidence is such that the allegations are not fully supported." Id. at 22. When asked about her shoulder pain at the hearing on October 2, 2017, Plaintiff testified the pain was worse in her left shoulder. Id. at 380. Plaintiff further testified this pain made it difficult to lift, reach overhead, and use her hands, but such pain "takes turns," and "when it don't hurt it's okay." Id. at 381. Both statements contradict Dr. Sochat's opinion that Plaintiff was limited to no pushing and pulling with her right upper extremity. Thus, in light of the medical records and Plaintiff's own testimony submitted after Dr. Sochat made his determination, the ALJ properly concluded Plaintiff could perform "occasional pushing and pulling with bilateral upper extremities" but "no overhead reaching bilaterally." Id. at 19.

Therefore, based upon the evidence, the Court finds Plaintiff's first assignment of error to be without merit.

### B. Apparent Conflict between Vocational Expert's Testimony and the DOT

Plaintiff's second assignment of error asserts an apparent conflict exists between the jobs identified by the VE at step five and the reasoning level required to perform those jobs. (Doc. No. 13, p. 12). Further, Plaintiff contends the ALJ "failed to identify the apparent conflict . . . and failed to explain how that conflict was resolved" and as such those errors necessitate remand. (Doc. No. 13, p. 15). Conversely, Defendant argues there is no unresolved apparent conflict regarding the representative occupations cited by the VE. (Doc. No. 15, p. 14).

After determining Plaintiff was unable to return to her past relevant work, (Tr. 23), the burden shifted to the ALJ to produce evidence that jobs exist in significant numbers in the national economy which Plaintiff could still perform given her RFC and vocational factors including age, education, and work experience. 20 C.F.R. § 416.960(c). Before relying on the testimony of a VE in its determination of disability, SSR 00-4p requires the ALJ to: (1) "identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the Dictionary of Occupational Titles," and (2) "[e]xplain in the determination or decision how any conflict that has been identified was resolved." SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000). The ALJ must first ask the VE if the evidence she provided conflicts with information in the DOT. Pearson v. Colvin, 810 F.3d 204, 207-8 (4th Cir. 2015). Then, the ALJ "independently must identify conflicts between the expert's testimony and the Dictionary." Id. at

209. If such a conflict exists, the ALJ must "obtain a reasonable explanation for" and "resolve" any apparent conflicts before relying on the VE's evidence. Id. at 208.

Here, the ALJ posed a hypothetical to the VE, asking whether jobs existed in the national economy that an individual with Plaintiff's age, education, work experience, and RFC could perform. (Tr. 24). In response, the VE testified given those factors, such an individual would be able to perform the requirements of representative occupations such as: Addressor (DOT #209-587.010), of which approximately 14,000 positions exist nationally; Document Preparer (DOT #249-587.018), of which approximately 14,000 positions exist nationally; and Film Inspector (DOT #726-684.050), of which approximately 10,000 jobs exist nationally. (Tr. 24-25). In answer to the ALJ's question of whether his testimony would be consistent with the DOT, the VE replied that it would. (Tr. 393). Further, the ALJ independently determined the VE's testimony was consistent with the information contained in the DOT. (Tr. 25).

Two of the jobs listed by the VE, addressor and film inspector, require a General Educational Development ("GED") reasoning level of two. DICOT 726.684-050 (G.P.O.), 1991 WL 679601; DICOT 209.587-010 (G.P.O.), 1991 WL 671797. The third job listed by the VE, document preparer, requires a reasoning level of three. DICOT 249.587-018 (G.P.O.), 1991 WL 672349. Under the DOT, a reasoning level of two requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations." DOT, App. C, 1991 WL 688702. A reasoning level of three requires the ability to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and] [d]eal with problems involving several concrete variables in or from standardized situations." Id.

13

Based on these definitions, Plaintiff argues the reasoning level requirements for the positions identified by the VE conflict with the RFC limiting her to "simple, routine tasks." (Doc. No. 13, p. 13-14).

Plaintiff relies on precedent to support her argument that such a limitation is inconsistent with the reasoning level requirements. (Doc. No. 13, p. 13-14). First, Plaintiff cites Eddie v. Berryhill, 2017 WL 4002147, at *8 (E.D.N.C. 2017), which held "[a] limitation to performing simple tasks appears inconsistent with the requirements of Reasoning Level 3." Next, Plaintiff relies on Thomas v. Berryhill, 916 F.3d 307, 313 (4th Cir. 2019), which held there was an "'apparent conflict' between a limitation to 'short, simple instructions' . . . and a need to carry out 'detailed but uninvolved . . . instructions' (as found in jobs requiring Level 2 reasoning)." However, based on more recent Fourth Circuit precedent, such reliance is incorrect.

In Lawrence v. Saul, 941 F.3d 140, 141 (4th Cir. 2019), the Fourth Circuit held there is no apparent conflict between an RFC limitation to "simple, routine, repetitive tasks" and a job requiring a Reasoning Level 2. The Lawrence Court rejected the plaintiff's argument that there is "no meaningful difference" between an RFC for "simple, routine, repetitive *tasks*" and the plaintiff's RFC in Thomas, which limited the plaintiff to jobs involving "short, simple *instructions*". Id. at 143. The Lawrence Court stated the "key difference" is that the Thomas holding rests on the inconsistency between the RFC for *short* instructions and a job requiring the ability to perform *detailed* instructions. Id. As in Lawrence, here, the RFC does not include a limitation to "short, simple *instructions*" but instead limits Plaintiff to "simple, routine *tasks*." (Tr. 19). Thus, Defendant is correct in asserting that Lawrence, and not Thomas, controls in this case

14

and as such there is no apparent conflict between Plaintiff's RFC and the two jobs listed by the VE that require a Reasoning Level 2. (Doc. No. 15, p. 13).

Finally, the presence of even one occupation that exists in significant numbers is sufficient to satisfy the Commissioner's burden at step five, and as few as 110 jobs in a region represents a significant number. See Hicks v. Califano, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979). The VE testified approximately 14,000 jobs existed nationally for the role of addressor, and approximately 10,000 jobs existed for the position of film inspector. (Tr. 24-25). Further, as Defendant noted, even if this Court had found an unresolved apparent conflict regarding the Document Preparer job requiring Reasoning Level 3, such an error is harmless because no conflict exists for the remaining jobs identified that only require Reasoning Level 2[1]. As such, the Court finds the Commissioner has met this burden.

Because there is no apparent conflict between the ALJ's RFC determination and the jobs listed by the VE that require Reasoning Level 2, and because those positions listed by the VE exist in significant numbers in the national economy, the Commissioner's determination on this matter is affirmed.

### IV. CONCLUSION

Accordingly, because the Court finds the ALJ's determination is consistent with applicable law and is supported by substantial evidence in the record, Plaintiff has presented no basis for reversal or remand of the ALJ's decision.

---

[1] To the extent Plaintiff alludes to an error in the ALJ's failure to include "short, simple instructions" in the RFC (Doc. No. 13, p. 14), the Court finds Plaintiff has failed to sufficiently allege and argue this assignment of error. Further, such an error would be harmless because no such conflict exists for the remaining two jobs that only require Reasoning Level 2.

IT IS THEREFORE ORDERED for the reasons above, Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 12) is DENIED; the Commissioner's Motion for Summary Judgment (Doc. No. 14) is GRANTED; and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: August 13, 2020

Frank D. Whitney
United States District Judge